NOT FOR PUBLICATION

UNITED STATES DISTRICT COURT
DISTRICT OF NEW JERSEY

| | |
|---|---|
| NICOLE C.,<br><br>Plaintiff,<br><br>v.<br><br>COMMISSIONER OF SOCIAL SECURITY,<br><br>Defendant. | Civil Action No. 24-7342 (RK)<br><br>**OPINION** |

**KIRSCH, District Judge**

**THIS MATTER** comes before the Court on Nicole C.'s [1] ("Nicole" or "Plaintiff") appeal from the Commissioner of the Social Security Administration's (the "Commissioner" or "Defendant") final decision, which denied Nicole's request for Social Security Disability and Supplemental Security Income benefits. (ECF No. 1.) The Court has jurisdiction to review this appeal under 42 U.S.C. § 405(g) and reaches its decision without oral argument pursuant to Local Civil Rule 78.1. For the reasons below, the Court **AFFIRMS** the Commissioner's decision.

**I.      BACKGROUND**

In this appeal, the Court must answer the following question: does substantial evidence support Administrative Law Judge Peter Lee's ("Judge Lee") determination that Nicole was not disabled?

---

[1] The Court identifies Plaintiff by first name and last initial only. *See* D.N.J. Standing Order 2021-10.

A.  **PROCEDURAL POSTURE**

Nicole filed an application for disability benefits on August 23, 2019. (Administrative Record ("AR") at 62, 77.)[2] The Social Security Administration (the "Administration") denied the request initially (*id.* at 120) and after reconsideration (*id.* at 138–43). Nicole requested a hearing before an Administrative Law Judge ("ALJ"). (*Id.* at 143.) Nicole appeared at a hearing in front of Judge Lee on October 24, 2022, wherein Judge Lee heard testimony from Nicole, who was represented by counsel, and a vocational expert, Michael Smith ("VE"). (*Id.* at 35–61.) On June 12, 2023, Judge Lee issued a written decision finding that Nicole was not disabled. (*Id.* at 14–28.) After receiving notice of Judge Lee's unfavorable decision, Nicole requested a review by the Appeals Council. (*Id.* at 294–95.) On April 26, 2024, the Appeals Council determined that the reasons asserted by Nicole for appeal "do not provide a basis for changing the Administrative Law Judge's decision." (*Id.* at 1.)

This appeal followed. (ECF No. 1.) The Administrative Record was filed on August 27, 2024. (ECF No. 5.) Nicole filed a moving brief (ECF No. 8, "Pl. Br."), the Commissioner responded (ECF No. 14, "Def. Br."), and Nicole filed a reply (ECF No. 16, "Pl. Rep."). The appeal is now ripe for review by this Court.

B.  **JUDGE LEE'S DECISION**

On June 12, 2023, Judge Lee issued a decision finding that Nicole was not disabled. (AR at 17–28.) Nicole, who was just shy of 30 years old on her alleged disability onset date, October 22, 2018, claims "disability due to physical and mental impairments" stemming from, *inter alia*,

---

[2] The Administrative Record ("Record" or "AR") is available at ECF Nos. 5-1 through 5-7. This Opinion will reference only page numbers in the Record without the corresponding ECF numbers.

2

anxiety, depression, a migraine condition, and an overactive bladder. (*See id.* at 22–23.) Nicole testified that on a typical day, she is able to wake up, feed her cats, spend 15 minutes outside "to get some air," and take a nap for a few hours. (*Id.* at 43 (hearing transcript).) Nicole was fired from her previous job because "full-blown panic attack[s]" precluded her from going to work, and she exhausted all of her available excused absences. (*Id.* at 44–45 (hearing transcript).) She also testified that, due to depression, she "often" stopped showering. (*Id.* at 45 (hearing transcript).) Nicole also explained that much of her anxiety stemmed from her bladder control issues, which led her to be consistently thinking about the location of the closest bathroom and whether it might be suitable for her use. (*Id.* at 46–49 (hearing transcript).) Although she was previously employed, was married (*see id.* at 638), and took care of herself and her cat, she testified that she was unable to work because of the amount of time she would need to either spend in the bathroom or lay down in a dark room without lights. (*Id.* at 22–23.)

In reaching his decision that Nicole was not disabled, Judge Lee applied the five-step process for determining whether an individual is disabled as set forth in 20 C.F.R. §§ 404.1520(a)(4) and 416.920(a)(4). (*Id.* at 18–19.) At Step One, Judge Lee found that Nicole had not engaged in substantial gainful activity since the alleged onset date, October 22, 2018.[3] (*Id.* at 20 (citing 20 C.F.R. §§ 404.1571 *et seq.*, 416.971 *et seq.*).) At Step Two, Judge Lee found that Nicole suffered from six severe impairments: (1) overactive bladder, (2) migraine headache, (3) depressive disorder, (4) ADHD, (5) anxiety disorder (with resulting IBS), and (6) substance abuse.

---

[3] Although Nicole *did* work for pay after October 22, 2018, the record reflects that she earned only $130.88 in 2019, and it is uncontested that "this work activity did not rise to the level of substantial gainful activity." (AR at 20, 325.) In the decade before the alleged onset of her disability, Nicole worked full time in various jobs and earned roughly $11,000 to $31,600 annually. (*Id.* at 40–42, 325.)

3

(*Id.* (citing 20 C.F.R. §§ 404.1520, 416.920(c)).) At Step Three, Judge Lee determined that Nicole did not have "an impairment or combination of impairments" that qualified under the Administration's listed impairments. (*Id.* at 21–22 (citing 20 C.F.R. §§ 404.1520(d), 404.1525, 404.1526, 416.920(d), 416.925, 416.926).) As part of the "Step Three" determination, Judge Lee found that there was no evidence of Nicole's migraine headaches occurring at least once a week for three consecutive months "despite adherence to prescribed treatment" or that her headaches "caused a marked limitation in any area of physical or mental functioning." (*Id.* at 21.) As for her mental impairments, Judge Lee noted that Nicole had a few mild or moderate limitations, but nothing "extreme" or "marked." (*Id.* at 21–22.) In particular, the ALJ found that Nicole had a mild limitation in remembering or applying information, and credited Nicole's self-report that she could follow written instructions (after reading them a number of times), but had difficulty following oral instructions. (*Id.*) Judge Lee assigned a moderate limitation to both "interacting with others" and "concentrating, persisting, or maintaining pace." (*Id.* at 22.) As to the former, Nicole was found to be "friendly, attentive, communicative, and coherent" but also reported "panic attacks" and "anger issues." (*Id.*) As to the latter, Nicole had mixed results on a variety of mathematical and memory tests; she answered questions correctly according to the Wechsler Memory Scales and completed a three step mathematical activity, but could not do "serial sevens" and "could not spell WORLD" in reverse. (*Id.*)

Then, as a precursor to Step Four, Judge Lee determined that Nicole had the following Residual Functional Capacity ("RFC"):

> [T]he claimant has the residual functional capacity to perform light work as defined in 20 CFR 404.1567(b) and 416.967(b) except: Never climb ropes, ladders, or scaffolds; never be exposed to unprotected heights or hazardous machinery; occasionally climb stairs and ramps; occasionally crawl; occasionally kneel; frequently

4

>stoop and crouch; frequent reaching; frequently balance; able to wear shaded or tinted lenses during work hours; have proximate access to restroom facilities; occasional contact with supervisors, co-workers and the public; able to do only simple and routine tasks.

(*Id.* at 22–23.)

In determining Nicole's RFC, Judge Lee considered the medical opinions from three medical professionals. One of the professionals, Nurse Laura Romano ("Nurse Romano"), treated Nicole starting in July 2021 and issued a report stating that Nicole would be unable to meet competitive standards in a work setting in: (1) maintaining attention for two hour segments, (2) completing a normal workday without psychological interruptions, (3) performing at a consistent pace without an unreasonable number and length of rest periods, (4) dealing with normal work stress, and (5) using public transportation. (*See id.* at 25, 604.)

Two other medical professionals—Drs. Sebato Lombardo and Sharon Ames-Dennard—were state agency consultants who also rendered medical opinions. (*See id.* at 25, 63–76.) Dr. Lombardo, a medical consultant, opined that Nicole "was capable of light work." (*Id.* at 25 (citing Exs. 2A; 4A; 6A; 8A).) Dr. Ames-Dennard, a psychological consultant, opined that Nicole had "moderate limitations in interacting with others and concentration skills" and "mild limitations in the remaining domains." (*Id.*)

Judge Lee assessed the credibility of each professional. He found the opinions of Nurse Romano to be unpersuasive on the grounds that "they are not supported by the record." (*Id.*) He explained that in clinical testing, Nicole only had "moderate to mild limitations" and "was able to take care of her cats and maintain her personal hygiene." (*Id.* at 25.) Judge Lee found Dr. Lombardo's opinion persuasive, and based on same, incorporated additional functional limitations to Nicole's RFC due to her migraines, overactive bladder, fatigue, and obesity. (*Id.*) Judge Lee also found Dr. Ames-Dennard's opinion to be persuasive because it was consistent with the overall

record, especially the clinical testing which showed Nicole's abilities in some, but not all, mental acuity tests. (*Id.*)

At Step Four, Judge Lee found that Nicole had past relevant work as a cashier/checker, a pest control worker, and a surveillance system monitor. (*Id.* at 26.) However, consistent with the VE's testimony, Judge Lee determined that, based on her RFC, Nicole could not perform any of that past work. (*Id; see also id.* at 58.) Notwithstanding, at Step Five, Judge Lee considered testimony from the VE and concluded that "there are jobs in significant numbers in the national economy" that Nicole could perform. (*Id.* (citing 20 C.F.R. §§ 404.1569, 404.1569a, 416.969, 416.969a).) In particular, the impartial expert testified that representative jobs that Nicole could perform, consistent with Judge Lee's RFC, included a collator operator, a mail clerk, and a photocopy machine operator. (*Id.* at 27, 58.) Since Judge Lee found that jobs existed in significant numbers in the national economy for an individual with Nicole's RFC, Judge Lee determined that Nicole has not been under a disability since October 22, 2018. (*Id.* at 27.)

## II.    LEGAL STANDARD

### A.    STANDARD OF REVIEW

The Court reviews the Commissioner's final decision to determine whether the Commissioner's findings are "supported by substantial evidence." 42 U.S.C. § 405(g). If the Appeals Council denies a claimant's request for review, "the ALJ's decision is the Commissioner's final decision." *Matthews v. Apfel,* 239 F.3d 589, 592 (3d Cir. 2001) (citation omitted). Substantial evidence is "more than a mere scintilla but may be somewhat less than a preponderance of the evidence." *Zirnsak v. Colvin,* 777 F.3d 607, 610 (3d Cir. 2014) (quoting *Rutherford v. Barnhart,* 399 F.3d 546, 552 (3d Cir. 2005)). Put differently, "[i]t means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Morales v. Apfel,* 225 F.3d

310, 316 (3d Cir. 2000) (quoting *Plummer v. Apfel*, 186 F.3d 422, 427 (3d Cir. 1999)). This evidentiary threshold "is not high." *Biestek v. Berryhill*, 587 U.S. 97, 103 (2019).

The scope of the Court's review of the ALJ's decision is "quite limited." *Rutherford*, 399 F.3d at 552. On review, the Court may not "re-weigh the evidence or impose [its] own factual determinations." *Chandler v. Comm'r of Soc. Sec.*, 667 F.3d 356, 359 (3d Cir. 2011) (citing *Richardson v. Perales*, 402 U.S. 389, 401 (1971)). "Where the ALJ's findings of fact are supported by substantial evidence, we are bound by those findings, even if we would have decided the factual inquiry differently." *Fargnoli v. Massanari,* 247 F.3d 34, 38 (3d Cir. 2001) (citing *Hartranft v. Apfel*, 181 F.3d 358, 360 (3d Cir. 1999)).

### B. ESTABLISHING ELIGIBILITY FOR DISABILITY INSURANCE BENEFITS

A claimant may establish disability under the Social Security Act by proving that they are unable to "engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. § 423(d)(1)(A). The ALJ applies a well-established "five-step sequential evaluation process," which requires considering whether the claimant:

> (1) is engaged in substantial gainful activity; (2) suffers from an impairment or combination of impairments that is "severe"; (3) suffers from an impairment or combination of impairments that meets or equals a listed impairment; (4) is able to perform his or her past relevant work; and (5) is able to perform work existing in significant numbers in the national economy.

*McCrea v. Comm'r of Soc. Sec.*, 370 F.3d 357, 360 (3d Cir. 2004) (citing 20 C.F.R. §§ 404.1520(a)–(f), 416.920(a)–(f)). The claimant bears the burden at the first four steps, at which point it shifts to the Commissioner at Step Five. *Hess v. Comm'r Soc. Sec.*, 931 F.3d 198, 201 (3d Cir. 2019) (citing 20 C.F.R. §§ 404.1520(a)(4), 416.920(a)(4)).

## III. DISCUSSION

Nicole appeals Judge Lee's decision of non-disability. (*See* ECF No. 1.) Nicole raises two issues on appeal: *first*, that Judge Lee failed to include limitations in Nicole's RFC that were consistent with her medically determinable impairments, and *second*, that Judge Lee failed to properly consider Nurse Romano's medical opinion and evidence related to Nicole's participation in outpatient services. (Pl. Br. at 1.) For the reasons explained below, the Court finds that the Commissioner's findings are supported by substantial evidence and affirms Judge Lee's decision.

### A. NICOLE'S RFC

Judge Lee determined that Nicole had the residual functional capacity to perform "light work" where she would, *inter alia*, be "able to wear shaded or tinted lenses during work hours," "have proximate access to restroom facilities," and be "able to only do simple and routine tasks." (AR at 22–23.) Plaintiff contends that these additional limitations are insufficient. (Pl. Br. at 14.) Specifically, Plaintiff argues that Judge Lee's RFC assessment inadequately accounts for: (1) the time that Plaintiff will spend in the restroom on a daily basis, rather than just her need to be close to a restroom; (2) the phonophobia associated with her migraines, as opposed to just the photophobia;(3) Plaintiff's need to lie down due to her migraines; and (4) Plaintiff's moderate limitations in concentrating, pace, and persisting. (*Id.* (citing AR at 22).) The Court finds that substantial evidence supports Judge Lee's RFC determination, and that he appropriately accounted for all of Nicole's limitations.

An ALJ's finding of a claimant's RFC must "be accompanied by a clear and satisfactory explication of the basis on which it rests." *Fargnoli*, 247 F.3d at 41. The District Court "examine[s] the ALJ's conclusions as to a claimant's RFC with 'the deference required of the substantial evidence standard of review.'" *Martin v. Comm'r of Soc. Sec.*, 547 F. App'x 153, 160 (3d Cir.

2013) (quoting *Burns v. Barnhart*, 312 F.3d 113, 129 (3d Cir. 2002)). Substantial evidence does not require highly detailed explanations, "[t]o the contrary, a reviewing court must 'uphold' even 'a decision of less than ideal clarity if the agency's path may reasonably be discerned.'" *Garland v. Ming Dai*, 593 U.S. 357, 369 (2021); *see also Cotter*, 650 F.2d at 482 ("[T]he ALJ is not required to supply a comprehensive explanation for the rejection of evidence; in most cases, a sentence or short paragraph would probably suffice.").

Plaintiff's first contention relates to her "severe impairments of overactive bladder and irritable bowel syndrome." (Pl. Br. at 15.) Plaintiff argues that even though Judge Lee limited her RCF to jobs with proximity to a restroom, the limitation does not address the time she needs to spend in the restroom throughout the day. (*Id.* at 16.) In support of her argument, Plaintiff points to *Williams v. Commissioner of Social Security*, a case where the ALJ neither cited nor discussed a medical report about claimant's urinary frequency and did not include any RFC limitations related to claimant's "urinating upwards of ten times a day." No. 18-13465, 2019 WL 4574502, at *2–3 (D.N.J. Sept. 20, 2019). On appeal, the district court remanded the ALJ's determination, finding that the court "cannot determine on the present record whether the ALJ's decision was supported by substantial evidence because it presently lack[ed] the requisite access to the ALJ's reasoning." *Id.* at *3.

*Williams*, however, is distinguishable. Judge Lee did consider ample evidence related to Nicole's bladder-related impairments, and referred to these impairments throughout his decision. (*See, e.g.*, AR at 20–21, 23–25.) Unlike in *Williams*, Judge Lee determined that Nicole's "overactive bladder" was a severe impairment that could "significantly limit [her] ability to perform basic work activities." (*Id.* at 20.) Specifically, Judge Lee explained that Nicole "began to complain of an overactive bladder in 2017" and that "over time the claimant's symptoms

9

progressed." (*Id.* at 24.) He further noted that Nicole "indicated that she had difficulty getting to the bathroom in time when she had to urinate. She reported that she had to urinate approximately every two [hours] during the daytime" and that she "reported an abnormal sensation when needing to urinate." (*Id.*) Judge Lee noted that the record included "no evidence of inflammatory bowel disease" or other digestive diseases. (*Id.* at 21.)

Clearly, Judge Lee's analysis of Nicole's urinary condition is a far cry from *Williams*' "lack of requisite reasoning." 2019 WL 4574502, at *3. Additionally, whereas the RFC in *Williams* did not account for claimant's overactive bladder at all, Judge Lee created Nicole's RFC to only include jobs where she could work in close proximity to a bathroom. (AR at 22–23.) Accordingly, the Court finds that his consideration of her urinary impairments is supported by substantial evidence.

Nicole also takes issue with Judge Lee's treatment of her migraine disorder. (Pl. Br. at 19–20.) Plaintiff asserts that "absent from the ALJ's RFC are any allowances or limitations specific to noise, the need to lie down, or the need to be absent from work due to a migraine." (*Id.* at 20.) Instead, Plaintiff argues, Judge Lee's sole accommodation in the RFC, that Nicole "be able to wear shaded or tinted lenses during work hours" is insufficient given the evidence of her debilitating migraine condition. (*See* AR at 23.) In his decision, Judge Lee acknowledged that Nicole "began complaining of headaches in January 2019" and that her migraines were associated "with photophobia, phonophobia, nausea and vomiting." (*Id.* at 24.) The ALJ also pointed to a dearth of evidence in the medical record "of a professional observation, or third-party description, of a migraine headache event" and found "no evidence that the claimant has experienced migraine headaches occurring at least once a week for three consecutive months despite adherence to

prescribed treatment, or that her headaches cause a marked limitation in any area of physical or mental functioning." (*Id.* at 21.)

Judge Lee also cited contrary evidence in the record, which showed that not every self-reported symptom related to the alleged migraine impairment was credibly established. *See Rutherford v. Barnhart*, 399 F.3d 546, 554 (3d Cir. 2005). *First*, CT testing was negative. (AR at 24.) *Second*, according to March 2020 treatment records, Nicole was prescribed medication for twice a day use that reportedly had "positive results," "good efficacy," and no side effects. (*Id.*) *Third*, Nicole reported only two migraines in the three months prior to March 2020. (*Id.*) And *finally*, "MRI testing of the brain was unremarkable." (*Id.*) Ultimately, Judge Lee's determination was supported by the medical evidence. *See Doak v. Heckler*, 790 F.2d 26, 28 (3d Cir. 1986).

Plaintiff cautions that an ALJ must be "particularly diligent" in making determinations regarding migraine headaches "because laboratory tests cannot prove their existence." (Pl. Br. at 19 (quoting *Means v. Colvin*, No. 15-1107, 2016 WL 3386814, at *5 (W.D. Pa. June 20, 2017)).) The *Means* court advised that, in addition to medical evidence, a court "should consider when a plaintiff complains of migraines to determine whether or not the complaints are credible." *Means*, 2016 WL 3386814, at *5. Here, unlike the ALJ in *Means*, who "oversimplifie[d] the complexity of plaintiff's condition," *id.* at *6, Judge Lee properly accounted for information beyond laboratory reports including a self-report of fewer migraines and lack of side effects to medication. (AR at 24 (citing AR at 628).)

Finally, Plaintiff objects to the ALJ's determination that Nicole is "able to do only simple and routine tasks." (Pl. Br. at 18 (citing AR at 23).) Plaintiff argues that "the ALJ's RFC does not adequately account for moderate limitations in concentrating, maintaining pace and persisting." (*Id.*)

11

"'[C]oncentration, persistence, or pace' is tightly linked to the capacity to complete 'simple tasks.'" *Hess v. Comm'r of Soc. Sec.*, 931 F.3d 198, 213 (3d Cir. 2019). According to the Third Circuit, "as long as the ALJ offers a 'valid explanation,' a 'simple tasks' limitation is permitted after a finding that a claimant has 'moderate' difficulties in 'concentration, persistence, or pace.'" *Id.* at 211. Plaintiff argues that Judge Lee did not offer any "valid explanation" (Pl. Br. at 18); the Commissioner argues the opposite (Def. Br. at 11).

Here, the Court finds that Judge Lee indeed provided a "valid explanation," consistent with *Hess*'s directive. *See Hess*, 931 F.3d at 213. Judge Lee highlighted Nicole's own reports of suffering from panic attacks, racing thoughts, an increased heartbeat, and "feeling like she was suffocating which [led] to crying episodes." (AR at 24 (citing Ex. 16F).) Judge Lee also explained his reliance on clinical testing from the state agency psychologist, which showed that Nicole was able to complete certain mathematical testing, could recite digits in forward and reverse, and completed tasks after instructions were repeated, despite being unable to spell "world" in reverse. (*Id.*); *see McKee v. Saul*, No. 18-191, 2020 WL 5905097, at *17 (D.N.J. Oct. 6, 2020) (ALJ provided "valid explanation" when relying on state agency findings). Like in *Hess*, Judge Lee noted Nicole's engagement with daily activities, including her ability to "take care of her cats" and "maintain her personal hygiene." (AR at 24); *see also Hess*, 913 F.3d at 214 (ALJ provided valid explanation including evidence of "activities of daily living, which demonstrated that [plaintiff was] capable of engaging in a diverse array of 'simple tasks'"). Judge Lee's valid finding also included a recitation of Nicole's relevant prescriptions, including medical marijuana, Adderall, Seroquel, Zoloft, and Trazodone, which, Judge Lee noted, were "generally effective in reducing depression and anxiety." (AR at 24–25.)

Accordingly, finding each of Plaintiff's arguments unpersuasive, the Court concludes that the Commissioner's RFC decision was supported by substantial evidence.

**B.  MEDICAL OPINIONS**

In his decision, Judge Lee considered the persuasiveness of three medical professionals: Nurse Romano (who treated Nicole), Dr. Lombardo (state agency medical consultant), and Dr. Ames-Dennart (state agency psychological consultant). (*See id.* at 25.) Judge Lee concluded that Nurse Romano's opinion was "unpersuasive," and that both of the state agency consultants' opinions were persuasive. (*Id.*) On appeal, Plaintiff challenges only the evaluation of Nurse Romano's opinion, arguing that Judge Lee's decision "cites to no medical opinion evidence, or medical evidence of the record to support his findings, and therefore his evaluation of the opinion [of Nurse Romano] is in error." (Pl. Br. at 21.)

It is not the Court's function to second-guess or substitute its judgment for that of the factfinder ALJ, but rather to ensure, consistent with its limited, circumscribed role, that the findings are supported by substantial evidence in the record. *See Fargnoli,* 247 F.3d at 38. The Court finds that Judge Lee properly applied the correct legal framework when evaluating the persuasiveness of Nurse Romano's medical opinion, and appropriately incorporated the facts and opinions of each medical professional into his RFC analysis.

When making a disability determination, an ALJ must review and evaluate all medical opinions that are part of the record. *See Burnett v. Comm'r of Soc. Sec.,* 220 F.3d 112, 121 (3d Cir. 2000). However, not all medical opinions are created equal, or assessed equally. It is the sole province of the ALJ to consider medical opinions, decide how persuasive each medical opinion is, and articulate the persuasiveness of each opinion as part of the written determination. *See Cooper v. Comm'r of Soc. Sec.,* 563 F. App'x 904, 913 (3d Cir. 2014) (citing 20 C.F.R. § 416.927). Before

2017, opinions by treating medical sources were automatically given more weight than those by non-treating sources, otherwise known as the "treating source rule." *See* 20 C.F.R. § 416.927(c)(2) ("Generally, we give more weight to medical opinions from your treating sources, since these sources are likely to be the medical professionals most able to provide a detailed, longitudinal picture of your medical impairment(s)."). For claims filed after March 27, 2017, like the instant matter, the regulations require the Commissioner to consider the following factors when evaluating all medical opinions: (1) supportability; (2) consistency; (3) relationship with the claimant, including the length of the treating examination, the frequency of examinations, and the purpose of the treatment relationship; (4) the medical source's specialization; and (5) other factors, including, but not limited to, "evidence showing a medical source has familiarity with the other evidence in the claim or an understanding of our disability program's policies and evidentiary requirements." 20 C.F.R. §§ 404.1520c(c), 416.920c(c).

The regulations emphasize that "the most important factors" for the ALJ and Commissioner to consider when evaluating the persuasiveness of medical opinions are the factors of supportability and consistency. *Id.* at §§ 404.1520c(a), 416.920c(a). Accordingly, the regulations require the ALJ to "discuss supportability and consistency" when articulating his "consideration of medical opinions and prior administrative medical findings." *Lee Ann M. v. O'Malley*, No. 22-1104, 2024 WL 4184486 at *7 (D.N.J. Sept. 13, 2024) (citations omitted). "Supportability" is "the extent to which the medical source's opinion is supported by relevant objective medical evidence and explanations presented by the medical source." *Carolyn N. v. Comm'r of Soc. Sec.*, No. 22-4957, 2023 WL 8271767, at *5 (D.N.J. Nov. 30, 2023) (quotation omitted). "Consistency" is "the extent to which the medical source's opinion is consistent with the record as a whole." *Id.* (quotation omitted).

When an ALJ evaluates a medical opinion, he is not required "to use particular language or adhere to a particular format in conducting his analysis." *Jones v. Barnhart*, 364 F.3d 501, 505 (3d Cir. 2004) (citing *Burnett*, 220 F.3d at 119–20). Instead, the Court must "ensure that there is sufficient development of the record and explanation of findings to permit meaningful review." *Id.*

As to the consistency factor, Judge Lee noted that Nurse Romano's opinion that Nicole was unable to meet competitive standards in five separate areas, was inconsistent with clinical testing from another provider—Dr. Jack Baharlias—which showed that that Nicole was able to take care of her cats and maintain her personal hygiene. (AR at 25.) Furthermore, Judge Lee indicated that in "clinical testing, the [claimant] displayed generally moderate to mild limitations," as opposed to the "serious[]" limitations set forth in Nurse Romano's conclusions. (*Id.*)

Viewed in its entirety, Judge Lee's decision elucidates many inconsistencies between Nurse Romano's opinion and other evidence in the record. *See Jones v. Barnhart*, 364 F.3d 501, 505 (3d Cir. 2004) (finding that the ALJ's decision, "read as a whole" sufficiently developed the record and explained relevant findings). Although Nurse Romano opined that Nicole could not comport well with normal stress, Judge Lee cited medical records showing that Nicole's symptoms of anxiety and depression had been ameliorated by a series of prescribed medications. (AR at 24–25 (citing Exs. 11F, 14F).) And despite Nurse Romano's finding that Nicole suffered from "mood disturbance," "persistent disturbances of mood or affect," and "emotional withdrawal or isolation," (*id.* at 603), Judge Lee stated that Nicole was found to be "friendly, attentive and communicative" with "no evidence of frequent outbursts." (*Id.* at 22.) Judge Lee also reasoned that, in reviewing the record evidence, there was "no indication of any need for a highly structured setting, medical treatment, mental health therapy, or psychosocial supports." (*Id.*)

Judge Lee's analysis also noted the noticeable inconsistencies between Nurse Romano's opinion and those from the state agency consultants. (*See id.* at 25 (citing Exs. 2A, 4A, 6A, 8A).) Whereas Nurse Romano opined that Nicole could not maintain attention for two hours, complete a normal workday without interruptions, or deal with normal work stress, (*id.* at 604), Dr. Lombardo found Nicole to be only moderately limited in her abilities "to maintain attention and concentration for extended periods," and "to interact appropriately with the general public." (*Id.* at 72–73.) Dr. Ames-Dennart found no further mental limitations. (*Id.*) Here, the state expert opinions, clearly in contradiction with Nurse Romano's, "merit[] significant consideration." *See Amaya v. Comm'r of Soc. Sec.*, No. 19-287, 2020 WL 6336181 at *3 (D.N.J. Oct. 29, 2020); *see also Becker v. Kijakazi*, 2022 WL 1128994, at *12–13 & n.6 (E.D. Pa. Apr. 14, 2022) (affirming ALJ's decision that found a "non-treating, non-examining consultant[] who reviewed a limited record" more persuasive than the treating physicians). Overall, even though Judge Lee evaluated Nurse Romano's credibility in a single paragraph, the Court, reading the ALJ's decision as a whole, is satisfied that his consistency analysis is supported by substantial evidence.

As to the supportability factor, Judge Lee determined that Nurse Romano's opinion was not supported by her own medical records. *See Nicholas R. v. Kijakazi*, No. 22-4510, 2023 WL 3580837, at *5 (D.N.J. May 19, 2023) ("The supportability of the opinion describes the extent to which a medical source has articulated support for the medical source's *own* opinion." (emphasis added) (internal quotation omitted)). Although Nurse Romano's opinion diagnosed Nicole with, *inter alia*, "appetite disturbance with weight change," and "decreased energy," (*see* AR at 603), Judge Lee cited to Nurse Romano's own treatment notes from January 2018, wherein Nicole, despite "complain[ing] of anxiety," "reported [] a normal appetite, fair energy and motivation[, and] she indicated that she did not have any outbursts or impulsive behaviors." (*Id.* at 24 (citing

16

Ex 1F, AR at 414–25).) These same treatment notes indicate that Nicole's "self care skills are fair. Her relationship with family and friends are normal. Her work performance is normal. There have been no outbursts or expressions of anger. Impulsive behaviors are not currently being displayed. [Nicole] has fair food and normal fluid intake. [Nicole] has not been confused . . . vocabulary and fund of knowledge indicate cognitive functioning in the normal range. Insight into problems appears normal. Judgment appears intact." (*Id.* at 414–15.) Treatment notes from February and March 2018 confirm the same. (*See id.* at 417–25.)

      Here, the ALJ's decision as a whole evidences that he reviewed both Nurse Romano's medical opinion and her underlying treatment notes and concluded that the two were inconsistent, and provides a reasoned basis for finding Nurse Romano's opinions unpersuasive. *See Cotter*, 650 F.2d at 482 ("[T]he ALJ is not required to supply a comprehensive explanation for the rejection of evidence; in most cases, a sentence or short paragraph would probably suffice.").

17

## CONCLUSION

Having reviewed the record as a whole, the decision of the Commissioner is **AFFIRMED.** An appropriate Order accompanies this Opinion.

_____
**ROBERT KIRSCH**
**UNITED STATES DISTRICT JUDGE**

<u>Dated</u>: May 8, 2025